IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ROBERT WILLIAM AVERY,                                                                    PLAINTIFF
ADC #652373

v.                                    4:21CV00468-DPM-JTK

STRINGFELLOW DENTISTRY, et al.                                                       DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition ("Recommendation") has been sent to Chief United States District Judge D.P. Marshall Jr. Any party may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

I. **INTRODUCTION**

Robert W. Avery ("Plaintiff") is incarcerated at the Wrightsville Unit of the Arkansas Division of Correction ("ADC"). Plaintiff sued multiple Defendants pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to his serious dental needs. (Doc. No. 2). Only Plaintiff's claims against Defendant Jessica Jackson Breedlove—as set out in Grievances WHM20-00084, WHM20-00087, and WHM20-00091—remain pending; those claims are limited to the period of January 15, 2020 to July 8, 2020. (Doc. Nos. 2, 25, 26, 28).

Plaintiff has filed a Motion for Summary Judgment on the merits of his case. (Doc. Nos. 47-49). Defendant Breedlove has responded. (Doc. Nos. 55, 56). Defendant Breedlove has

filed a competing Motion for Summary Judgment. (Doc. Nos. 57-59). Plaintiff has responded, and Defendant Breedlove has replied. (Doc. No. 62, 63, 67). After careful consideration of the record before me, I recommend Defendant Breedlove's Motion (Doc. No. 57) be granted, Plaintiff's Motion (Doc. No. 47) be denied, and Plaintiff's claims be dismissed with prejudice.

**II.    BACKGROUND -- Plaintiff's Complaint**

In his Complaint, Plaintiff alleged Defendant Breedlove was deliberately indifferent to his dental needs, including treatment of Plaintiff's tooth #5 and tooth #11. (Doc. No. 2). Defendant Breedlove saw Plaintiff on January 15, 2020 for pain in tooth #11 and tooth #5. Plaintiff asked Defendant Breedlove to extract tooth #5 and fill tooth #11. (Id. at 6). Plaintiff alleges that Defendant Breedlove deferred treatment until February 19, 2020. (Id.) On February 19, 2020, Defendant Breedlove filled tooth #5 but did not treat tooth #11. (Id.)

On May 24, 2020, Plaintiff reported to medical that his tooth #5 was abscessed. (Id. at 7). Plaintiff alleges it took 45 days before he was seen by Defendant Breedlove for his abscessed tooth #5, which ultimately was extracted. (Id. at 8). According to Plaintiff, Defendant Breedlove "caused extensive damage to [Plaintiff's] mouth while extracting the abscessed #5 tooth." (Doc. No. 2 at 8).

Meanwhile, Plaintiff's #11 tooth remained untreated. (Id. at 9-10). Plaintiff claims Defendant Breedlove, having knowledge of the problems with Plaintiff's tooth #11, failed to see him for a March 15, 2021 appointment. (Id. at 10). Plaintiff maintains the delay in treatment resulted in the abscess of tooth #11, which Defendant Breedlove extracted on May 11, 2021. (Id. at 9-12).

II.  **SUMMARY JUDGMENT STANDARD**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

IV.  **DISCUSSION**

Plaintiff alleged deliberate indifference to his serious dental needs.

A.  **Official Capacity Claims**

Plaintiff sued Defendant Breedlove in her official and personal capacities. Plaintiff's official capacity damages claims against Defendant Breedlove are the equivalent of claims against her employer, Wellpath. See Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (1993). To succeed on a claim against Wellpath, Plaintiff would have had to establish that a Wellpath policy or custom was the driving force behind the violation of Plaintiff's rights. See Id.

Because Plaintiff has not come forward with evidence that a Wellpath policy or custom resulted in the violation of his rights, summary judgment in Defendant Breedlove's favor on Plaintiff's official capacity claims is appropriate.

### B. Personal Capacity Claims—Deliberate Indifference to Serious Medical Needs

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. AMEND. VIII. This prohibition gives rise to the government's duty to provide medical care to prisoners. "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration.'" Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002) (internal citation omitted). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Schuab v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (internal citation omitted). "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need. See Washington v. Denney, 900 F.3d 549, 559 (8th Cir. 2018); McRaven v. Sanders, 577 F.3d 974, 981 (8th 2009).

### 1. Medical Records and Plaintiff's Grievances

Plaintiff has not contested the authenticity of the medical records Defendant Breedlove submitted in support of her Motion. Medical records reflect that Plaintiff mentioned the need for fillings on December 3, 2019. (Doc. No. 58-1 at 2). The sick call nurse who tended to Plaintiff during that visit noted "multiple tooth decay," no signs of infection, and minimal pain. (Id.). The encounter notes indicate: "refer to Dental and provider." (Id. at 2, 5). Plaintiff was advised to "[r]eturn to sick call if [his] jaw start[ed] swelling, [his] pain got worse, or [he] [had] a fever." (Id. at 6).

The record does not reflect that Plaintiff had further dental complaints before he was seen by Defendant Breedlove in January 2020.

Defendant Breedlove saw Plaintiff on January 15, 2020 for a "dental sick call." (Id. at 7). Plaintiff's complained that "[he] need[s] fillings." (Id.). Defendant Breedlove performed a "limited oral exam / examined UR area for specific problem." (Doc. No. 58-1 at 7). Plaintiff's temperature was 97.6. (Id.). The encounter notes reflect that tooth #5 was fractured with deep decay. (Id.). The encounter notes further reflect that the decay "appears restorable." (Id.). Plaintiff was added to the filling list for tooth #5. (Id.). Defendant Breedlove

> [e]xplained to patient what treatment will be done at the next dental appointment. Oral hygiene instructions given today. Explained the dental procedures which were performed today or will be performed on another day, the prognosis for success and the possible complications associated with treatment as well as risks of not having treatment. Informed patient of recommended treatment.

(Id.).

Defendant Breedlove also noted that if Plaintiff "desires further treatment, a request form should be submitted." (Doc. No. 58-1 at 7).

The January 15, 2020 encounter notes are silent as to tooth #11.

5

Defendant Breedlove next saw Plaintiff on February 19, 2020. (Id. at 7). The encounter notes reflect that "[d]ecay is present and appears restorable." (Id.). Defendant Breedlove noted that she "[i]nformed patient of recommended treatment. If patient desires further treatment, a request form should be submitted." (Id.). Plaintiff's signed consent to treatment form is included in the record. (Id. at 12). During the February 19, 2020 visit, Defendant Breedlove filled Plaintiff's tooth #5. (Id. at 7). Defendant Breedlove noted that "inmate given instructions and understands if tooth becomes symptomatic it will warrant extraction." (Doc. No. 58-1 at 7).

Plaintiff testified at deposition that there was nothing wrong with Defendant Breedlove's treatment until February 19, 2020: "We're good until February 19th of '20. Everything went good." (Doc. No. 58-2 at 28:16-21).

During his deposition, Plaintiff explained that his claims against Defendant Breedlove began as of February 19, 2020. (Id. at 28:16-21). Plaintiff testified that when he saw Defendant Breedlove on February 19, 2020, they discussed the damage to tooth #5. (Id. at 28:22-29:6). According to Plaintiff, Defendant Breedlove told him tooth #5 was very decayed and barely salvageable. (Id.) Defendant Breedlove ultimately told Plaintiff that she would like to save tooth #5, and that she would call him back later regarding tooth #11. (Id.) Tooth #5 was filled. Plaintiff testified that he believed Defendant Breedlove acted inappropriately by filling tooth #5 after "she mentioned that it was nearly to the point of being inrestorable – non-restorable and also the disagreement that we had about her not filling two teeth at once." (Id. at 29:11-16; 30:11-14).

The medical records show that Plaintiff was seen by various medical providers after February 19, 2020. (Doc. No. 58-1 at 15-16).

Plaintiff received a 14-day prescription for ibuprofen on March 4, 2020 during a follow-up care encounter, though it is not clear for which condition the follow up was had. (Id. at 14).

6

On March 7, 2020 during a "wellness check," a provider saw Plaintiff after he filed a grievance stating he might be allergic to codeine. (Id. at 15). There is no mention of a dental problem. The provider recommended Plaintiff take ibuprofen instead of codeine, a pain killer, if ibuprofen would suffice. Plaintiff agreed, saying "I don't need it anyway." (Id.).

On March 18, 2020, Plaintiff saw LPN Patterson during an "outcount return" in connection with orthopedic issues. (Id.). Plaintiff's scripts for an ortho boot and crutches were renewed. (Id. at 15, 25). There was no mention of a dental problem.

On April 24, 2020, Plaintiff was seen for a follow up appointment for an earlier ankle surgrey/orthopedic issue. (Doc. No. 58-1 at 25). There is no mention of a dental problem.

On May 10, 2020, Plaintiff submitted a health services request for lower back and shoulder pain, and a dental complaint. (Id. at 21). On May 11, 2020, Plaintiff saw LPN Plummer in connection with "a pulled or strained muscle in [Plaintiff's] lower back, . . . [and] pain in [his] shoulders due to arthritis and thinness of mat." (Id.). During that visit Plaintiff also complained that the "dentist still has not fixed tooth [and] it has been over 90 days." (Id. at 15). The notes reflect that the focus of the encounter was Plaintiff's acute back pain. (Id.). Plaintiff was given naproxen[1] in response to his complaints. (Id. at 15-16).

---

[1] Prescription naproxen is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints), rheumatoid arthritis (arthritis caused by swelling of the lining of the joints), juvenile arthritis (a form of joint disease in children), and ankylosing spondylitis (arthritis that mainly affects the spine). Prescription naproxen tablets, extended-release tablets, and suspension are also used to relieve shoulder pain caused by bursitis (inflammation of a fluid-filled sac in the shoulder joint), tendinitis (inflammation of the tissue that connects muscle to bone), gouty arthritis (attacks of joint pain caused by a build-up of certain substances in the joints), and pain from other causes, including menstrual pain (pain that happens before or during a menstrual period). Nonprescription naproxen is used to reduce fever and to relieve mild pain from headaches, muscle aches, arthritis, menstrual periods, the common cold, toothaches, and backaches. Naproxen is in a class of medications called NSAIDs. It works by stopping the body's production of a substance that causes pain, fever, and inflammation. https://medlineplus.gov/druginfo/meds/a681029.html (accessed March 25, 2022).

Plaintiff submitted a health services request on May 23, 2020 in connection with dental issues, and back and shoulder pain. (Doc. No. 58-1 at 23). Plaintiff first complained about an abscessed tooth during the corresponding May 24, 2020 encounter. (Doc. No. 58-1 at 16; Doc. No. 58-2 at 30:23-31:7). On May 24, 2020, Plaintiff was seen by LPN Plummer during a sick call at the Wrightsville Hawkins for Male Health Services Office, and complained about losing the filling on the left side of his mouth "about a week ago," as well as having a cavity on the right side of his mouth that he is supposed to have filled "that is beginning to give him trouble." (Doc. No. 58-1 at 16). Plaintiff's vital signs were "within normal limits with exception of systolic pressure as noted, even and unlabored respirations; noted tooth decay on top right eye tooth." (Id.). During that visit, Plaintiff's chief complaint was abscess of a tooth.[2] (Id.). He was prescribed ibuprofen for ten days. (Id. at 17, 24). The complaints Plaintiff made about his tooth on May 24 were "forwarded to the dental department." (Id. at 17).

Plaintiff was seen again on June 1, 2020 in the Health Services Office in connection with his tooth and high blood pressure. (Id. at 25). The encounter notes reflect:

> Notes that he is having prob his tooth. States it is swollen. States he has been in twice for sick call. Reports that the dentist drilled it out and states that she went really deep with it. States she went too thin with the walls. Reports that his bp is

---

[2] As noted in Avery v. Turn Key Health Clinics, LLC., 839 Fed. Appx. 26 (8th Cir. 2021) (per curiam) (Kelly, Circuit Judge, concurring in part and dissenting in part),

> A tooth abscess is not a simple toothache. It is a bacterial infection of the root of the tooth, and it can spread to the adjacent gum and beyond—way beyond. Dobbey v. Mitchell-Lawshea, 806 F.3d 938, 940 (7th Cir. 2015). See generally Tooth Abscess, MayoClinic, https://www.mayoclinic.org/diseases-conditions/tooth-abscess/symptoms-causes/syc-20350901 (last accessed Dec. 23, 2020) (describing a tooth abscess as a "pocket of pus" caused by a bacterial infection). Dentists may treat a tooth abscess by "draining it and getting rid of the infection," root canal treatment, or by pulling the tooth. See id. "Leaving a tooth abscess untreated can lead to serious, even life-threatening, complications." Id.

> elevated as he has been eating at least one soup a day. Reports he used to eat more. States he does not want to be on bp med.

(Doc. No. 58-1 at 25). The provider recorded that Plaintiff "[d]oes have a swollen upper mandible tooth, does have tenderness to the right upper sinus area, too." (Id.). This is the first time swelling was noted. Plaintiff was prescribed amoxicillin,³ and was given an injection of Ceftriaxone Sodium.⁴ (Doc. No. 58-1 at 25-26; Doc. No. 58-2 at 31:25-32:9; Doc. No. 58-3 at 3). The encounter notes do not reflect that Plaintiff complained of pain.

Plaintiff's Grievance WHM20-00084, submitted June 3, 2020, reflects that he experienced pain in connection with connection with a tooth he had been waiting 120 days to have filled (presumably tooth #11), and that he has an abscess in a tooth where the filling fell out (presumably tooth #5). (Doc. No. 48 at 11). That Grievance reads:

> I have not been back to the Dentist since February/January. As a result my dental health has worsened. I have suffered headaches upset stomach associated with an abscessed tooth I have had [continuous] pain from a tooth that I've been waiting to have filled for an excess of 120 days. Records will prove that Dentist Breedlove has continued services and treated patients throughout the Covid19 issue in the A.D.C. Deliberate indifference has been shown toward my dental issues. I am presently suffering as a result of this abscess and lack of dental care resulting in deliberate indifference.

(Id.)

---

³ "Amoxicillin is used to treat certain infections caused by bacteria, such as pneumonia; bronchitis (infection of the airway tubes leading to the lungs); and infections of the ears, nose, throat, urinary tract, and skin. It is also used in combination with other medications to eliminate *H. pylori*, a bacteria that causes ulcers. Amoxicillin is in a class of medications called penicillin-like antibiotics. It works by stopping the growth of bacteria." https://medlineplus.gov/druginfo/meds/a685001.html (Accessed March 24, 2022).

⁴ Ceftriaxone injection is used to treat certain infections caused by bacteria such as gonorrhea (a sexually transmitted disease), pelvic inflammatory disease (infection of the female reproductive organs that may cause infertility), meningitis (infection of the membranes that surround the brain and spinal cord), and infections of the lungs, ears, skin, urinary tract, blood, bones, joints, and abdomen. Ceftriaxone injection is also sometimes given before certain types of surgery to prevent infections that may develop after the operation. Ceftriaxone injection is in a class of medications called cephalosporin antibiotics. It works by killing bacteria. https://medlineplus.gov/druginfo/meds/a685032.html (Accessed March 24, 2022).

On June 11, 2020, Plaintiff was seen in connection with his high blood pressure. (Doc. No. 58-1 at 26). The encounter notes from this visit indicate Plaintiff did not have a fever; his temperature was 98.8 degrees. (Id.). There was no mention of dental issues.

On June 23, 2020, Plaintiff submitted Grievance WHM20-00087, again complaining that tooth #11 had not been filled and tooth #5 had not been extracted. (Doc. No. 48 at 15). Grievance WHM20-00087 reads:

> On 2/19/2020, Ms. Breedlove called me into Dental about (2) teeth that needed either extracted or filled, I asked to have #11 filled and the #5 extracted. Breedlove did not fill #11 and did not extract #5 which became abscessed. I was given antibiotics, but have not been seen by a dentist or medical. Now the #5 tooth has began swelling and filling with pus, because it has not been properly treated. The tooth Breedlove failed to fill has an exposed neve I am in pain and have not been given any pain medication. I am experiencing sleeplessness, an inability to chew certain foods. I have bee into medical twice about my dental pain, and have not seen a dentist. This has been an ongoing issue causing pain constantly, a pus pocket has formed around the root of the #5 tooth.

(Id.)

On June 29, 2020, Plaintiff returned to the pill call window; Plaintiff testified that there was "so much pus and pain . . . in that tooth that [he] begged them to call someone. (Doc. No. 58-2 at 37:11-20). A telephone call was placed, and Plaintiff was prescribed a different antibiotic along with ibuprofen on the verbal order of Dr. Stringfellow, a dentist, "for the treatment of tooth infection and pain." (Doc. No. 58-1 at 30; Doc. No. 58-3 at 4-5). Specifically, Plaintiff was prescribed a ten-day course of Clindamycin,[5] along with ibuprofen. The medical notes from June

---

[5] Clindamycin is used to treat certain types of bacterial infections, including infections of the lungs, skin, blood, female reproductive organs, and internal organs. Clindamycin is in a class of medications called lincomycin antibiotics. It works by slowing or stopping the growth of bacteria. https://medlineplus.gov/druginfo/meds/a682399.html (accessed March 24, 2022).

29 reflect that Plaintiff was to be "referred to dental for further care after abx [antibiotics] treatment." (Doc. No. 58-1 at 30).

Plaintiff's ten-day prescription of Clindamycin ran out on July 8, 2020. Defendant Breedlove extracted Plaintiff's Tooth #5 on July 8, 2020. (Id. at 37-40). Two types of pain killer were administered during the procedure. (Id. at 37). During that same visit, Defendant Breedlove recommended filling tooth #11. (Id. at 39). This is the first mention of tooth #11 in Defendant Breedlove's dental records.

On July 12, 2020, Plaintiff filed Grievance WHM20-00091. (Doc. No. 48 at 18). Plaintiff's Grievance WHM20-00091 alleges deliberate indifference during the extraction of tooth #5, and again complains that tooth #11 has not been filled. (Id.). Grievance WHM20-00091 reads:

> On 7/7/2020, Dentist Breedlove pulled an abscessed #5 tooth, the process of this extraction could not be deadened or numbed properly, this extraction was the most painful and prolonged dental procedure I've ever experienced. The infection from the abscess has caused sores to develop all through my mouth. Damage was done to my inside right jaw area. The roof of my mouth, as well as my gums, during the extraction I could hear breaking sounds and tools slipped. Deliberate indifference was shown toward the complications of extracting an abscessed tooth with a Covid-19 epidemic in the Hawkins Unit, since having the #5 tooth extracted I've been in pain with sores developing in my mouth, I don't have pain medication, the dental issue that was causing me pain #11 tooth was not filled and was left untreated since Feb. 2020.

(Id.)

### 2. Defendant Breedlove

Plaintiff acknowledged that the health services administrator, not Defendant Breedlove, responds to medical grievances. (Doc. No. 58-2 at 48:12-23). Plaintiff did not know if Defendant Breedlove saw his grievances (Id.).

Plaintiff believes Defendant Breedlove knew about dental issues he brought to the attention of providers at the infirmary; he says the infirmary forwarded his complaints to the dental department. (Id. at 31:14-16). But the record establishes that Plaintiff's complaints between February 19, 2020 and May 23, 2020 were not sent to dental. (Doc. No. 58-1 at 15-17; Doc. No. 67-2 at 2, 6). Plaintiff's only evidence to the contrary is hearsay that the Court cannot consider in deciding this Motion. (Doc. No. 58-2 at 39:1-11). Fed. R. Evid. 801(c); Jenkins v. Winter, 540 F.3d 742, 748 (8th Cir. 2008). Further, there is no evidence that dental complaints from the infirmary were forwarded directly to Defendant Breedlove.

Defendant Breedlove maintains she first became aware of Plaintiff's abscessed tooth on July 8, 2020, when Plaintiff's name appeared on her patient list. (Doc. No. 67-1 at 1). Defendant Breedlove extracted Plaintiff's tooth that same day. (Id. at 1).

Additionally, according to Susan McDonald, D.D.S., a current Wellpath employee and custodian of medical records, Defendant Breedlove did not examine patients at the Hawkins Unit for Males (where Plaintiff was incarcerated at the time) from May 24, 2020 and July 8, 2020. (Doc. No. 67-2 at 3). Defendant Breedlove was on vacation from June 18, 2020 until July 5, 2020. (Id.).

### 3. Plaintiff's Response

Plaintiff maintains Defendant Breedlove was made aware of his need for fillings as early as January 11, 2019. (Doc. No. 62 at 1, 37). On that date, Plaintiff submitted a health service request saying he "[n]eed[s] cavities filled and teeth cleaned." (Id. at 37). Plaintiff alleges Defendant Breedlove was made aware of his dental needs: through a health service request on December 3, 2019; during a dental appointment on January 15, 2020; during a dental appointment on February 19, 2020; through health services requests on May 11 and 24, 2020; through a health

12

services request on October 29, 2020; and through a health services request on November 24, 2020. (Id. at 1). Plaintiff maintains that despite Defendant Breedlove's knowledge of his dental needs, she delayed treatment, in violation of his constitutional rights.

As mentioned above, the Court limited this action to claims raised in exhausted grievances, which covers the period of January 15, 2020 to July 8, 2020. Plaintiff disagrees with the time limitation. Citing Jones v. Berge, 172 F. Supp. 2d 1128, 1134 (W.D. Wis. Sept. 18, 2001), Plaintiff argues that "any claim for relief that is within the scope of the pleadings may be litigated without further exhaustion." (Doc. No. 62 at 10). The exhaustion issue in Jones is different than the exhaustion issue in this case was. In Jones, the court was considering exhaustion where inmate plaintiffs in a class action sought preliminary injunctive relief. The question was whether each inmate class member was required to exhaust claims common across the class to survive a motion to dismiss. The court found that one class member exhausted his claims, and that was "sufficient to defeat defendants' motion to dismiss." Jones, 172 F. Supp. 2d at 1134. Here, the exhaustion issue was related to a lack of exhausted grievances that alleged wrongful conduct after July 8, 2020. The Court is not persuaded by Plaintiff's argument.

### 4. Analysis

This Court is keenly aware of the importance of, and an inmate's right to, adequate dental care. For example, "[a] three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983." Boyd v. Knox, 47 F.3d 966, 969 (8th Cir. 1995) (defendant dentist waited three weeks to refer plaintiff to surgeon when it had been determined tooth was impacted and would be extracted by surgeon outside the prison). See also Patterson v. Patterson, 19 F.3d 439 (8th Cir. 1994) (grant of summary judgment reversed in deliberate indifference claim with roughly one month delay in

extracting tooth when plaintiff made multiple requests for extraction, was in extreme pain, had an extremely swollen jaw, and pus coming from his eye); Moore v. Jackson, 123 F.3d 1082 (8th Cir. 1997) (genuine issue of fact as to deliberate indifference where plaintiff complained of infection, swelling, fever, discharge from his eye and nose, and intense pain, but experienced eight-month delay in extraction).

In support of his case, Plaintiff relies on Jerrell v. Bradley, case no. 09-5060, 2011 WL 2182750 (W.D. Ark. June 6, 2011). (Doc. No. 47 at 13). That case is distinguishable. There, it was determined on December 9, 2008, that the plaintiff's tooth needed to be extracted. Id. at *9. The detention center in which the plaintiff was incarcerated worked with only one dentist who "had no set schedule for when inmates would be seen." Id. at *9. Despite the determination that the plaintiff's tooth needed to be extracted, and despite multiple complaints about his tooth and the pain it caused, the plaintiff received no dental care until June 11, 2008, some six months later, though the plaintiff was prescribed antibiotics a couple of times in between. Id. at *11.

Plaintiff's current case is more similar to an earlier dental care case Plaintiff brought than to Jerrell v. Bradley. In his earlier case, Plaintiff alleged the care he received in the Benton County Detention Center—where he was in custody pending transfer to the ADC—violated his constitutional rights. Avery v. Turn Key Health Clinics, case no. 5:18cv05075 (W.D. Ark.) (filed May 8, 2018). In that case, on March 23, 2018, it was found that Plaintiff had "tooth decay, redness, swelling, . . . and signs of infection'"; he was added to the dental call list and prescribed amoxicillin and ibuprofen. Avery v. Turn Key, Doc. No. 102, p. 3. Some days later, a dental visit was approved by the ADC, but Turn Key had not yet hired a staff dentist. Id. at 4. On March 31, 2018, Plaintiff complained that the antibiotics had not helped and he was prescribed a stronger antibiotic on April 3, 2018. Id. Plaintiff was seen again on April 16 and prescribed pain

14

medication and antibiotics. Id. at 4. He was seen again on May 7, 2018, and prescribed orajel. Id. at 5. Turn Key did not hire a dentist until about a week before Plaintiff transferred to the ADC, and Plaintiff did not see a dentist before he transferred to the ADC on August 29, 2018. Id. Plaintiff said that while he was in the detention center, he was in pain, unable to eat, and suffered weight loss. Avery v. Turn Key, Doc. No. 102, at 4. Plaintiff's infected tooth was extracted shortly after he arrived at the ADC, after experiencing dental issues at the Detention Center for roughly five months.

The court in Avery v. Turn Key recognized that "'dental care is one of the most important medical needs of inmates.'" Id. at 11 (citing Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001)). And the court in that case recognized that Plaintiff suffered from a serious dental need. Id. Considering the care Plaintiff received at the Detention Center, the Court, however, found that Plaintiff did not suffer a "delay in treatment, but rather in the treatment [Plaintiff] preferred." Id. at 12. As such, there was no violation.

The Court of Appeals for the Eighth Circuit agreed. Avery v. Turn Key Health Clinics, LLC, 839 Fed. Appx. 26 (8th Cir. 2021) (per curiam) (Kelly, Circuit Judge, concurring in part and dissenting in part).

Here, Plaintiff complained of an abscess on May 23, 2020, saw an LPN on May 24, 2020 and was given pain medication. Plaintiff complained again of tooth pain on June 1; swelling was noted for the first time and Plaintiff was given antibiotics. Plaintiff complained again on June 29, 2020, after which a dentist was consulted and Plaintiff was given a ten-day course of a different antibiotic to be followed by dental care. Ten days later, on July 8, 2020, when the 10-day course of antibiotics was complete, Plaintiff's tooth was extracted.

Plaintiff testified that at no point between June 1 and June 29 was he without antibiotics. (Doc. No. 58-2 at 37:23-38:7).  Plaintiff also confirmed that there was no period of time during which he did not have pain medication, if needed.  (Id. at 67:8-21).  Plaintiff's testimony that he had access to pain medication at all relevant times contradicts the statement he made in Grievance WHM20-00087 that he had not been given pain medication.  (Doc. No. 48 at 16).

As Plaintiff testified at deposition, as to being seen by the dentist, "[d]epending on the severity, you're put on a list or a pecking order."  (Doc. No. 58-2 at 28:4-5; Doc. No. 48 at 27-28).  That is consistent with the ADC's dental policy.  Based on Plaintiff's condition as described in the encounter notes, his dental condition was not emergent as that term is described by the ADC's dental services policy.  (Doc. No. 48 at 27) (defining dental emergency conditions as: tooth infection (abscess) with swelling, drainage and elevated body temperature; severe dental pain not responsive to simple or analgesic medication; post extraction with bleeding, swelling, and/or pain; jaw fracture; traumatic injury involving the bones of the jaw; and irreversible pulpits.)  Emergent dental problems receive first priority for treatment.  (Id. at 28).  Additionally, between March 23, 2020 and May 11, 2020, the Arkansas Dental Board directed that only emergency dental care could be provided as a Covid-19 preventative measure.  (Doc. No. 58-3 at 2).

Pursuant to policy, dental sick call requests are triaged within 24 hours of receipt either by "a medical health care services staff nurse" or "a member of the dental health care services staff." (Doc. No. 48 at 26).  The record reflects that Plaintiff was seen within 24 hours of submitting his May 10 2020 and May 23, 2020 sick call requests in which he mentioned a dental problem.

Again, on June 1, 2020, Plaintiff was prescribed antibiotics for a dental abscess.  (Doc. No. 58-1 at 25).  When asked at deposition what Plaintiff believed the standard of care for an abscessed tooth to be, Plaintiff, relying on information from the Mayo Clinic, said "getting rid of

Case 4:21-cv-00468-DPM   Document 68   Filed 03/31/22   Page 17 of 19

the infection," among other things.   (Doc. No. 58-2 at 39:20-40:6).

Plaintiff acknowledged that he was given antibiotics to treat his abscessed tooth.   (Id. at 32:25-33:6).   But Plaintiff takes issue with the fact that an LPN prescribed the medication.   (Id. at 33:7-11).   According to Plaintiff's deposition testimony, only someone with a dental license is allowed to practice dentistry, which under Arkansas law means "the evaluation, diagnosis, prevention, and treatment" of dental problems.   (Id. at 33:13-34:3).   Plaintiff acknowledges an LPN could prescribe amoxicillin, for example, "as long as it's not a dental issue."   (Id. at 34:4-11).   Plaintiff maintains that "you cannot rely on the actions of [an LPN] or Wellpath that were in violation of [Arkansas law regulating the practice of dentistry] to excuse the lack of care given by Breedlove."   (Id. at 35:13-15).   Plaintiff's claim against Defendant Breedlove, then, has less to do with the fact that he initially was prescribed antibiotics and more to do with the fact that it was not a dentist who prescribed the medication.   (Doc. No. 58-2 at 44:24-45:9).

With regard to the tooth Plaintiff maintains needed filled, tooth #11, there is no mention of that tooth in Defendant Breedlove's notes and no other evidence establishing her deliberate indifference as to that tooth.   Moreover, Plaintiff has not established how the delay up to July 8, 2020 harmed him.   Redmond v. Kosinski, 999 F.3d 1116, 1120 (8th Cir. 2021).

The record establishes that Plaintiff was receiving care for his dental complaints.   In his Complaint, Plaintiff takes issue with Defendant Breedlove filling tooth #5 on February 19, 2020 rather than extracting the tooth.   But Plaintiff agreed to the procedure.   And, as the Court of Appeals for the Eighth Circuit has explained, "mere disagreement with treatment decisions . . . does not rise to the level of a constitutional violation."   Cejvanovic v. Ludwick, 923 F.3d 503, 507-08 (8th Cir. 2019).   Plaintiff's earlier dental care case failed for this same reason.   Avery, 839 Fed. Appx. at 26.   Perhaps filling tooth #5 was a poor decision, but the record does not support

a finding that doing so constituted deliberate indifference. To the extent Plaintiff complained of the way tooth #5 was extracted on July 8, 2020, it appears that claim sounds more in negligence than a violation of the Eighth Amendment.

The Court finds that any disputes of fact are not material and do not make the entry of summary judgment in Defendant Breedlove's favor inappropriate. <u>Sitzes v. City of West Memphis, Ark.</u>, 606 F.3d 461, 465 (8th Cir. 2010) (disputes that are not genuine or that are about facts that are not material will not preclude summary judgment). Plaintiff has not met proof with proof to establish facts in dispute that would preclude partial summary judgment in Defendants' favor. <u>Wilson v. Miller</u>, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); <u>Bolderson v. City of Wentzville, Missouri</u>, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). The facts of this case do not support a finding that Defendant Breedlove was deliberately indifferent to Plaintiff's serious dental needs. As such, Defendant Breedlove's Motion (Doc. No. 57) should be granted, Plaintiff's motion (Doc. No. 47) denied, and Plaintiff's complaint dismissed with prejudice.

**V.     Conclusion**

IT IS, THEREFORE, RECOMMENDED that:

1. Defendant Breedlove's Motion for Summary Judgment (Doc. No. 57) be GRANTED;

2. Plaintiff's claims against Defendant Breedlove be DISMISSED with prejudice;

3. Plaintiff's Motion for Summary Judgment (Doc. No. 47) be DENIED;

4. Plaintiff's Complaint (Doc. No. 2) be DISMISSED.

Dated this 31st day of March, 2022.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE